UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| JOHN ANTHONY CASTRO,<br><br>   Plaintiff,<br>   v.<br><br>NEW YORK STATE BOARD OF ELECTIONS, DONALD JOHN TRUMP,<br><br>   Defendants. | Civil Action No. 1:23-cv-01223-GTS-DJS |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT DONALD JOHN TRUMP'S MOTION TO DISMISS PLAINTIFF'S VERIFIED COMPLAINT**

DHILLON LAW GROUP INC.
A California Professional Corporation
50 Park Place, Suite 1105
Newark, NJ 07102
Ronald D. Coleman (700589)
rcoleman@dhillonlaw.com
*Attorneys for Defendant
Donald John Trump*

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. I

TABLE OF AUTHORITIES ......................................................................................................... II

INTRODUCTION .......................................................................................................................... 1

LEGAL ARGUMENT ................................................................................................................... 2

    A.    Plaintiff's insufficient service of process ................................................................ 2

    B.    Plaintiff lacks standing ............................................................................................ 3

    C.    The Complaint presents a nonjusticiable political question, with Plaintiff's attempted distinctions being non-sequiturs ................................................................ 4

    D.    Section Three of the Fourteenth Amendment is not self-executing ......................... 7

    E.    Plaintiff's claims are not ripe ................................................................................... 9

    F.    Plaintiff fails to address—and thus concedes—President Trump's remaining, independently dispositive arguments that Plaintiff fails to state a claim ................. 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Azul-Pacifico, Inc. v. City of Los Angeles*,
   973 F.2d 704 (9th Cir. 1992) ............................................................................................ 8

*Burns-Toole v. Byrne*,
   11 F.3d 1270 (5th Cir. 1994) ............................................................................................ 8

*Caplan v. Trump*,
   Case # 23-cv-61628-ROSENBERG (S.D. Fla. Aug. 31, 2023) ....................................... 3

*Castro v. FEC*,
   Civil Action No. 22-2176 (RC), 2022 WL 17976630 (D.D.C. Dec. 6, 2022) ............... 3

*Castro v. N.H. Sec'y of State*,
   Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023) ..................................................... passim

*Castro v. Trump*,
   Case No. 23-80015-CIV-CANNON (S.D. Fl. June 26, 2023), cert. denied, Case No. 23-
   117, __ S. Ct. __, 2023 WL 6379034 (Oct. 2, 2023) ..................................................... 3

*Cedar-Riverside Assocs., Inc. v. City of Minneapolis*,
   606 F.2d 254 (8th Cir. 1979) ............................................................................................ 8

*Clark v. Weber*,
   Case No. 2:23-cv-07489-DOC-DFM (C.D. Cal. Oct. 20, 2023) ................................... 3

*Dixon v. Blanc*,
   796 Fed. Appx. 684 (2020) ............................................................................................... 2

*Ex parte Va.*,
   100 U.S. 339 (1879) .......................................................................................................... 8

*Foster v. Michigan*,

    573 F. App'x. 377 (6th Cir. 2014) .................................................................................... 8

*Fouts v. Maryland Cas. Co.*,

    30 F.2d 357 (4th Cir. 1929) ............................................................................................. 6

*Griffin v. Philips*,

    Dkt. No. 4:22-cv-268, 2023 WL 129416 (S.D. Ga. Jan. 9, 2023)................................... 2

*In re Griffin*,

    11 F.Cas. 7 (C.C.Va. 1869) ............................................................................................. 8

*Jordan v. Forfeiture Support Assocs.*,

    928 F. Supp. 2d 588 (E.D.N.Y. 2013)............................................................................. 2

*Katzenbach v. Morgan*,

    384 U.S. 641 (1966) ........................................................................................................ 8

*Kokkonen v. Guardian Life Ins. Co. of Am.*,

    511 U.S. 375 (1994) ........................................................................................................ 5

*L.T. v. Zucker*,

    No. 121CV1034LEKDJS, 2021 WL 4775215 (N.D.N.Y. Oct. 13, 2021)................... 10

*LaBrant v. Benson*,

    Case No. 23-000137-MZ (Mich. Ct. Cl. Nov. 14, 2023) ......................................... 1, 7

*Larsen v. Mayo Med. Ctr.*,

    218 F.3d 863 (8th Cir. 2000) .......................................................................................... 2

*Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ........................................................................................................ 3

*MacDonald, Sommer & Frates v. Yolo County*,

  477 U.S. 340 (1986) .................................................................................................... 6

*Massachusetts v. EPA.*,

  549 U.S. 497 (2016) .................................................................................................... 5

*Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195

  (S.D.N.Y. 2020) ........................................................................................................ 10

*Pacific Mut. Life Ins. Co. v. Haslip*,

  499 U.S. 1 (1991) ........................................................................................................ 8

*Palmieri v. Lynch*,

  392 F.3d 73 (2d Cir. 2004) ....................................................................................... 10

*Pueschel v. United States*,

  369 F.3d 345 (4th Cir. 2004) .................................................................................... 10

*Schaefer v. Trump et al.*,

  Case No. 23-cv-1451 JLS (BLM), 2023 WL 6798507 (S.D. Cal. Oct. 13, 2023) ...... 3

*Sladek v. Trump*,

  Case No. 1:23-cv-02089-LTB-SBP (D. Colo. Oct. 18, 2023) .................................... 3

*Texas v. United States*,

  523 U.S. 296 (1998) .................................................................................................... 9

*Thorpe v. Dumas*,

  788 F. App'x 644 (11th Cir. 2019) ............................................................................. 2

*Trump v. Benson*,

  Case No. 23-000151-MZ (Mich. Ct. Cl. Nov. 14, 2023) ............................................ 1

*Woods v. Interstate Realty Co.,*

   337 U.S. 535 (1949) ................................................................................................. 6

**Statutes**

13 Judiciary ch. 3, sec. 563 ............................................................................................ 9

28 Judicial Code 41 ........................................................................................................ 9

28 U.S.C. § 41 ................................................................................................................ 9

Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808 ............................................... 9

Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993 ................................................... 9

Enforcement Act ............................................................................................................ 9

**Other Authorities**

H.R. 1405, 117th Cong. 2021 ......................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(b) ...................................................................................................... 2

Fed. R. Civ. P. 4(d) ........................................................................................................ 2

Fla. R. Civ. P. 1.070(i) ................................................................................................... 2

Fed. R. Civ. P. 4(e)(2)(C) ............................................................................................... 2

**Constitutional Provisions**

U.S. Const. amend. XIV, § 3 .......................................................................................... 5

U.S. Const. amend. XIV, § 5 ...................................................................................... 6, 8

U.S. Const. amend. XX, § 3 ........................................................................................... 6

U.S. Const. art. I, § 2, cl. 5 ............................................................................................. 6

**INTRODUCTION**

Plaintiff lacks standing. The New Hampshire District Court recently so held. *See Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023). Moreover, outside of two conclusory sentences,[1] Plaintiff advances *no* argument in his "Verified" Response ("Resp.") to rebut Defendant's standing argument. This tacitly concedes the argument and is woefully insufficient to meet Plaintiff's burden to show this Court has subject matter jurisdiction.

Moreover, as both the New Hampshire District Court and the Michigan Court of Claims recently held, Plaintiff's claim raises a nonjusticiable political question. *See id.*; *LaBrant v. Benson*, Case No. 23-000137-MZ at 10-20 (Mich. Ct. Cl. Nov. 14, 2023); *Trump v. Benson*, Case No. 23-000151-MZ at 14-26 (Mich. Ct. Cl. Nov. 14, 2023).[2] The New Hampshire District Court specifically rejected Plaintiff's timing-based distinction as "without reason," stating "Castro does not point to any factual or legal authority to support the notion that the political question doctrine, and the separation-of-powers principle at its core, simply lay dormant until after the national conventions, and the court finds no reasoned basis for such a conclusion." *Castro*, at 18.

Plaintiff also fails to show that he effectuated service of process. Instead, he relies on a subsection of the FRCP that *disallows service of process through mail*.

Plaintiff seeks to conflate questions of who has standing with questions of whether Section 3 provides a self-executing cause of action. This is an irrelevant digression.

Plaintiff's non sequiturs notwithstanding, he completely ignores the substance of several additional dispositive arguments, effectively conceding them for purposes of this motion to

---

[1] "This has no bearing on Plaintiff who has a concrete and particularized political competitive injury. Plaintiff, in a Verified Complaint, explained that hundreds of voters have said they would support him but for Defendant Donald John Trump being a candidate." ECF No. 17, Resp. at 11.

[2] Attached to the Declaration of Ronald D. Coleman.

dismiss. For example, Plaintiff fails to rebut the Motion's showing that his claims are not ripe. Another example: other than stating that "Plaintiff has stated a claim" because the "law is clear," ECF No. 17, Resp. at 12, Plaintiff makes no effort to show that Section Three applies to President Trump or his conduct as alleged in the Complaint.

President Trump therefore requests that the Complaint be dismissed for failure to effectuate service, for lack of jurisdiction, and/or for failure to state a claim under Fed. R. Civ. P. 12(b).

## LEGAL ARGUMENT

### A. PLAINTIFF'S INSUFFICIENT SERVICE OF PROCESS

Plaintiff's Response confirms that he did not properly serve his complaint. First, while noting that state service laws can apply, he does not even attempt to explain how they were complied with here. That is, Plaintiff did not rebut Defendant's showing that he failed to serve Defendant properly under New York law. *See* ECF No. 9-1, Memo of Law at 2-3. Second, FRCP 4(e)(2)(C)—which Plaintiff relies on—permits a process server to physically deliver service to an agent authorized to accept service of process. It does *not* permit service on an agent via mail (especially one *not* authorized to accept service of process). *See, e.g.*, *Dixon v. Blanc*, 796 Fed. Appx. 684 (2020) ("[B]oth the Federal Rules and the Florida Rules generally permit service of process by certified mail only if the defendant agrees to waive personal service." (citing Fed. R. Civ. P. 4(d), (e); Fla. R. Civ. P. 1.070(i); *Larsen v. Mayo Med. Ctr.*, 218 F.3d 863, 868 (8th Cir. 2000))); *see also Griffin v. Philips*, Dkt. No. 4:22-cv-268, 2023 WL 129416, at *2-*3 (S.D. Ga. Jan. 9, 2023) (cases "consistently reject[]" the argument that "actual notice of a suit obviates the need for service"); *Thorpe v. Dumas*, 788 F. App'x 644, 648 (11th Cir. 2019) ("Service by mail generally does not constitute 'delivery' under subsections of Rule 4."); *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 595 (E.D.N.Y. 2013) ("delivery" not satisfied by "service by certified mail"). Plaintiff failed to effect service of process and his claim should be dismissed.

B.   **PLAINTIFF LACKS STANDING**

Plaintiff does not even try to rebut our standing argument (tacitly conceding it). Nor could he; three federal courts have already held that Plaintiff lacks Article III standing. *See Castro v. Trump*, Case No. 23-80015-CIV-CANNON (S.D. Fl. June 26, 2023), cert. denied, Case No. 23-117, __ S. Ct. __, 2023 WL 6379034 (Oct. 2, 2023); *Castro v. FEC*, Civil Action No. 22-2176 (RC), 2022 WL 17976630 (D.D.C. Dec. 6, 2022); *Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL (D.N.H. Oct. 27, 2023). Additionally, four other federal courts have rejected similar actions brought by individual voters based on a lack of standing. *See Caplan v. Trump*, Case # 23-cv-61628-ROSENBERG (S.D. Fla. Aug. 31, 2023); *Schaefer v. Trump et al.*, Case No. 23-cv-1451 JLS (BLM), 2023 WL 6798507 (S.D. Cal. Oct. 13, 2023) (CM/ECF No. 6); *Sladek v. Trump*, Case No. 1:23-cv-02089-LTB-SBP (D. Colo. Oct. 18, 2023) (CM/ECF No. 12); and *Clark v. Weber*, Case No. 2:23-cv-07489-DOC-DFM (C.D. Cal. Oct. 20, 2023) (CM/ECF No. 35).

Moreover, what little information Plaintiff does provide confirms that his complaint is nothing more than a generalized grievance. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 573-74 (1992) ("[A] plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."). Plaintiff notes that he "is a write-in candidate." ECF No. 17, Resp. at 3. Although he tries to distance himself from other write-in candidates, what this effectively means is *any* person in the country can be considered a "write-in candidate," and that a "write-in candidate" is no different than every other person in the country.

Plaintiff fails to allege facts sufficient to establish any of the required showings for Article III standing. The Complaint's highly attenuated claim of injury—that President Trump's presence on the 2024 ballot deprives Plaintiff of the political support he needs to win the Republican Party's

3

nomination for the next President of the United States—strains way too far. Speculation that a vote *may* change in the future is insufficient to establish an injury-in-fact for purposes of standing. *See Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 11 (D.N.H. Oct. 27, 2023) ("[Castro's] claimed injury is also speculative, as it depends on what voters and contributors—independent, third parties—<u>may</u> do if Trump's name is not listed on the New Hampshire primary ballot. Castro provides no evidence that any Trump supporter would support Castro under that circumstance. . . . An injury based on speculation about the decisions of independent actors does not confer standing."). Plaintiff lacks standing and this Court therefore lacks subject matter jurisdiction.

### C. THE COMPLAINT PRESENTS A NONJUSTICIABLE POLITICAL QUESTION, WITH PLAINTIFF'S ATTEMPTED DISTINCTIONS BEING NON-SEQUITURS

"[T]he vast weight of authority has held that the Constitution commits to Congress and the electors the responsibility of determining matters of presidential candidates' qualifications." *Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 10-11 (D.N.H. Oct. 27, 2023) (footnote omitted). Neither the courts noted by Judge Laplante in *Castro v. N.H. Sec'y of State*, nor Judge Laplante himself, were fooled, as Plaintiff suggests, regarding the political question doctrine. *See* ECF 17, Resp. at 10. Rather, these decisions acknowledge the clear constitutional commitment of a candidate's qualifications to Congress, not the federal courts. President Trump's Motion identifies the constitutional underpinnings committing the issue to Congress, and cites caselaw recognizing that this issue mandates a textbook application of the political question doctrine.

Plaintiff identifies no authority whatsoever supporting subject matter jurisdiction here. Instead, he offers a series of irrelevant distinctions to the cases cited in President Trump's Motion.

First, Plaintiff attempts to claim that the political question doctrine is merely an "affirmative defense" that Defendant bears the burden of proving. This is both wrong and immaterial. It is wrong because the political question doctrine is an assessment of subject matter

4

jurisdiction. Political questions are nonjusticiable and are therefore not "cases" or "controversies" under Article III, just as questions that seek an advisory opinion or are mooted by subsequent developments are not "cases" or "controversies." *See Massachusetts v. EPA.*, 549 U.S. 497, 516 (2016). "Federal courts are courts of limited jurisdiction. They possess only the power authorized by Constitution and statute . . . which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*. (citations omitted).

It is immaterial because even if some burden of proof were on President Trump—and it is not—President Trump has met it. President Trump extensively briefed and argued that Castro's claims present nonjusticiable political questions in his Motion to Dismiss and in this Reply. Second, Plaintiff asserts that this issue has not been committed to a political branch because "the Electoral College Act no longer allow[s] for objections based on qualifications." ECF No. 17, Resp. at 9. But this conflates the *Constitution's commitment of the issue to Congress* (which triggers the political question doctrine) with *how Congress chooses to act on it* (which is the political question itself). It is also inaccurate. *See generally Castro v. N.H. Sec'y of State*, Case No. 23-cv-416-JL at 15 n.27 (D.N.H. Oct. 27, 2023) ("Castro is correct that the Electoral Count Act was revised in 2022 . . . but, to the extent that he is arguing that this amendment limited the grounds for objections, that does not appear to be the case.").

Moreover, Plaintiff ignores the other constitutional provisions that commit the issue of qualification to Congress. For example, Section 3 of the Fourteenth Amendment gives Congress authority to remove any disability under that section. U.S. Const. amend. XIV, § 3. Section 5 of the Fourteenth Amendment expressly provides that "The Congress shall have the power to enforce,

5

by appropriate legislation, the provisions of this article." *Id.*, § 5. The Twentieth Amendment contemplates procedures and *congressional* action in the event that an unqualified President-elect takes office. *See* U.S. Const. amend. XX, § 3. The Twenty-Fifth Amendment provides, "*Congress shall decide the issue*" of Presidential incapacity. U.S. Const. amend. XXV (emphasis added). And the Constitution gives *Congress* (and Congress alone) the authority to remove the President from office. *See* U.S. Const. art. I, § 2, cl. 5. Congress's amendments to the Electoral College Act do not erase the political question posed here.

Third, Plaintiff claims that the political question doctrine holdings in cases brought to disqualify then-candidates Barack Obama and John McCain may be disregarded as *dicta*. This is wrong. Often they cannot even be fairly characterized as dicta, as in *Robinson v. Bowen,* in which, after holding that the named plaintiff lacked standing, the court refused to allow an intervenor who claimed to have standing to intervene because the claim was nonjusticiable rendering the proposed intervention futile. 567 F. Supp. 2d at 1147. At most, those rulings are more appropriately viewed as alternative holdings, which are not *dicta. See, e.g.*, *Woods v. Interstate Realty Co.,* 337 U.S. 535, 537 (1949) ("where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum"); *MacDonald, Sommer & Frates v. Yolo County*, 477 U.S. 340, 346 n.4 (1986) (alternative holdings are not *dicta*). Moreover, even "[i]f these conclusions were dicta, it does not necessarily follow that they were wrong." *Fouts v. Maryland Cas. Co*., 30 F.2d 357, 359 (4th Cir. 1929). The fact that similar lawsuits suffered *multiple* jurisdictional defects—the same defects presented here—does not support Plaintiff's position.

Fourth, Plaintiff claims that the "political question doctrine does not apply until after the major political parties hold their conventions." ECF No. 17, Resp. at 9. But there is no support for this claim. None of the political question cases cited above explicitly, or implicitly, tie the

6

application of the doctrine to whether the action is filed before or after party conventions.

Finally, Plaintiff only even addresses the first *Baker* factor, a clear textual commitment to the political branches. But as the Michigan Court of Claims held just yesterday, "factors 2, 4, 5, and 6 apply to the instant case." *LaBrant* at 15; *Trump* at 18. That court noted that the sheer number of cases concerning presidential qualifications "presents the risk of completely opposite and potentially confusing opinions and outcomes, which will certainly 'expose the political life of the country to months, or perhaps years, of chaos,'" that "there is no 'limited and precise rationale' to guide this Court and others that is also 'clear, manageable, and politically neutral,'" and that, "[b]ecause the cases involve the office of the President, such confusion and lack of finality will be more pronounced." *LaBrant* at 18-19; *Trump* at 23 (citations omitted).

Plaintiff's purported distinctions to the universe of caselaw dedicating candidate qualifications to Congress, rather than the federal courts, are unsupported and unavailing and his Complaint should be dismissed as nonjusticiable under the political question doctrine.

## D. SECTION THREE OF THE FOURTEENTH AMENDMENT IS NOT SELF-EXECUTING

As set forth in detail in President Trump's Motion, Section Three is not self-executing; it requires an act of Congress to effectuate in federal court. *See* ECF No. 9-1 at 6-8. Plaintiff's rebuttal is flat wrong. He claims that the "1870 Enforcement Act was created to grant individuals [*i.e.*, law enforcement] that otherwise did not have a direct injury . . . to remove public officials holding office in violation of Section Three." ECF No. 17 at 11. In other words, according to Plaintiff, Section Three was always self-executing and actionable by any aggrieved private party— but Congress enacted the Enforcement Act to give that same authority to district attorneys, too.

This argument conflates questions of who has standing with questions of whether Section 3 provides a private right of action. It is also ahistorical. The Fourteenth Amendment itself provides

7

that "*Congress* shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5 (emphasis added). One year after the Fourteenth Amendment's ratification, the Chief Justice of the Supreme Court, riding circuit, rejected an attempt to disqualify a sitting judge under Section Three by a petitioner who had recently been sentenced by that judge. *In re Griffin*, 11 F.Cas. 7 (C.C.Va. 1869). The Chief Justice denied the petition, holding that Section Three "clearly requires legislation in order to give effect to it," that it is "beyond reasonable question" that Section Three is "to be made operative . . . by legislation of congress in its ordinary course," and that to allow petitioner to enforce it himself would unleash "manifold evils." *Id*. One year later, Congress enacted the Enforcement Act, which reads, "[I]t shall be the duty of the district attorney of the United States . . . to proceed against a [violator of Section Three] . . . and to prosecute the same to the removal of such person from office."[3]

---

[3] That the Fourteenth Amendment is not self-executing for offensive purposes is well established. The United States Supreme Court has regularly reiterated that the enforcement power of the Fourteenth Amendment lies only in Congress, and Section Five of the Fourteenth Amendment confers the enforcement power on Congress to determine "whether and what legislation is needed to" enforce the Fourteenth Amendment. *Katzenbach v. Morgan*, 384 U.S. 641, 651 (1966); *Pacific Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 33 (1991) (Scalia, J., concurring) ("It cannot rightly be said that the Fourteenth Amendment furnishes a universal and self-executing remedy. Its function is negative, not affirmative, and it carries no mandate for particular measures of reform.") "Congress is authorized to *enforce* the prohibitions by appropriate legislation. Some legislation is contemplated to make the amendments fully effective." *Ex parte Va.*, 100 U.S. 339, 345 (1879); *Ownbey v. Morgan*, 256 U.S. 94, 112 (1921) ("[I]t cannot rightly be said that the Fourteenth Amendment furnishes a universal and self-executing remedy.").

It is Congress that has been provided the sole authority to provide the enforcement for the Fourteenth Amendment, not the states. *Cedar-Riverside Assocs., Inc. v. City of Minneapolis*, 606 F.2d 254 (8th Cir. 1979) (stating that Congress intended 42 U.S.C. § 1983 as an exclusive remedy for constitutional violations committed by municipalities and that "no reason exists to imply a direct cause of action (for such violations) under the fourteenth amendment."); *Foster v. Michigan*, 573 F. App'x. 377, 391 (6th Cir. 2014) ("[W]e have long held that § 1983 provides the exclusive remedy for constitutional violations."); *Burns-Toole v. Byrne*, 11 F.3d 1270, 1273 n.3 (5th Cir. 1994) (providing that § 1983 is the appropriate vehicle for asserting violations of constitutional rights); *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("We have previously held that a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983."). In other words, it is clear and black letter law that absent Congressional authorization, no private individual has a self-executing right to sue on the basis of any provision

Currently, no implementing legislation executes Section Three. The original Enforcement Act was codified as 13 Judiciary ch. 3, sec. 563 and later recodified into 28 Judicial Code 41—but in 1948, Congress repealed 28 U.S.C. § 41 in its entirety. *See* Act of June 25, 1948, ch. 646, § 39, 62 Stat. 869, 993; see also Act of June 25, 1948, ch. 645, § 2383, 62 Stat. 683, 808. Recent efforts to enact a cause of action under Section Three died in Congress. See H.R. 1405, 117th Cong. 2021.

Plaintiff's revisionism is entitled to no credence. Section Three is not self-executing, and Plaintiff fails to state a plausible claim to the contrary.

### E. PLAINTIFF'S CLAIMS ARE NOT RIPE

Plaintiff's Response fails to address this argument. The Motion highlights that ripeness is necessary because courts should not be required to resolve "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). The Motion explains that Section Three prohibits individuals from holding office. It does not, however, prohibit individuals from inclusion on the ballot, being nominated, or being elected. ECF No. 9-1 at 10-13.  In other words, whether President Trump will hold office is a contingent future event that may not occur at all. Plaintiff's Complaint is therefore not ripe, and Plaintiff has waived opposition to this argument.

### F. PLAINTIFF FAILS TO ADDRESS—AND THUS CONCEDES— PRESIDENT TRUMP'S REMAINING, INDEPENDENTLY DISPOSITIVE ARGUMENTS THAT PLAINTIFF FAILS TO STATE A CLAIM

President Trump also moved to dismiss the Complaint because (i) Section Three does not apply to the President of the United States and (ii) there is no plausible allegation that President Trump engaged in any conduct proscribed by Section Three. *See* ECF No. 9-1 at 13-15, 16-23.

---

of the Fourteenth Amendment. There is no current enforcement legislation for Section Three that would create such a right.

9

The fact that Section Three applies neither to President Trump nor his alleged conduct is well supported by the text and history of Section Three itself. Plaintiff offers no substantive rebuttal to these arguments. *See* ECF No. 17, Resp. at 12. His failure to do so constitutes a waiver that permits this Court to dismiss on the "uncontroverted bases asserted." *Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004); *see also, e.g.*, *Palmieri v. Lynch*, 392 F.3d 73, 87 (2d Cir. 2004) (a party who does not "raise [an] argument in his opposition to summary judgment" waives that argument); *Ohr Somayach/Joseph Tanenbaum Educ. Ctr. v. Farleigh Int'l Ltd.*, 483 F. Supp. 3d 195, 206 n.6 (S.D.N.Y. 2020) ("Arguments not raised in a party's brief are deemed waived."); *L.T. v. Zucker*, No. 121CV1034LEKDJS, 2021 WL 4775215, at *2 (N.D.N.Y. Oct. 13, 2021) (refusing to consider claims not included in the plaintiff's motion briefing).

These unrebutted arguments doom Plaintiff's case. Even if this Court were to decline to enforce a waiver due to Plaintiff's *pro se* status (which it should not do),[4] his failure to address these arguments shines a spotlight on his substantive failure to state a claim.

## CONCLUSION

Plaintiff's claim should be dismissed with prejudice.

---

[4] Although in the context of litigation Plaintiff seeks to portray himself as a *pro se* plaintiff entitled to special solicitude, in his day-to-day life he depicts himself rather differently—as a practicing lawyer who holds two law degrees and heads an international tax firm. *See* https://www.castroandco.com/staff-profiles/john-anthony-castro-j-d-ll-m/ ("John Anthony Castro is the managing partner of Castro & Co. Dr. Castro earned his Master of Laws (LL.M.) in International Taxation from Georgetown University Law Center in Washington, DC. Dr. Castro also earned a Doctor of Jurisprudence (J.D.) from UNM School of Law.… Dr. Castro is listed on each and every return submitted by Castro & Co. and AiTax as a Third-Party Designee, which authorizes him to practice federal tax law in all 50 states as well as the 68 countries with which the U.S. has income and estate tax treaties.…")).

Lest there be any misunderstanding, the undersigned counsel do not vouch for Plaintiff's status as a lawyer—he does not appear ever to have been admitted to any state bar—but that is how he holds himself out to the public. He should not be allowed to wear one costume in public and a different one when he thinks it advantages him here.

10

Dated: November 15, 2023

                                                     Respectfully submitted,
                                                     Defendant Donald John Trump,
                                                     By his Attorney,

                                                     */s/ Ronald D. Coleman*
                                                     Ronald D. Coleman (700589)
                                                     DHILLON LAW GROUP INC.
                                                     A California Professional Corporation

                                                     50 Park Place, Suite 1105
                                                     Newark, NJ 07102
                                                     rcoleman@dhillonlaw.com
                                                     *Attorneys for Defendant*
                                                     *Donald John Trump*

# CERTIFICATE OF SERVICE

I hereby certify that, on November 15, 2023, I caused the foregoing to be served on Defendant New York State Board of Elections via this Court's Electronic Case Filing system, and on Plaintiff via Federal Express at the following address:

John Anthony Castro
12 Park Place
Mansfield, TX 76063

*/s/ Ronald D. Coleman*
Ronald D. Coleman